UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LINDSAY MATHEWS

Plaintiff,

v.

COMPLETE LABOR & STAFFING LLC,

Defendant.

Civil Action No.

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Lindsay Mathews ("Mathews" or "Plaintiff"), by and through undersigned counsel, and complains against the Defendant, Complete Labor & Staffing LLC ("CLS" or "Defendant") as follows:

JURISDICTION AND PARTIES

1.    This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*; the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S. § 831 *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

2.    Plaintiff is a United States citizen residing in Eddington, Penobscot County, Maine.

3.    Defendant is a staffing agency that owns and operates various locations throughout New England, including three locations in the state of Maine.

1

4.      Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the same calendar year as when the alleged discrimination and retaliation occurred.

5.      At all times material to this Complaint, Defendant employed more than 500 employees.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7.      On June 13, 2024, Plaintiff timely filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC"), asserting claims of unlawful discrimination, retaliation, and hostile work environment.

8.      The MHRC subsequently investigated the matter, which included review of written submissions, request and review of documentation and information from the parties, and an Issues & Resolution Conference during which witnesses provided testimony.

9.      On May 4, 2026, the MHRC issued an Investigator's Report.

10.      On June 22, 2026, the MHRC adopted the Investigator's Report and findings.

11.      On June 23, 2026, the MHRC noted that the MHRC case was now closed, and that Plaintiff could pursue her case in litigation.

12.      On or about July 2, 2026, the EEOC issued a notice of a right to sue, in accordance to Plaintiff's federal claims.

13.       Plaintiff has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

<u>JURY TRIAL REQUESTED</u>

14.     Plaintiff requests a jury on all issues for which a jury trial is available

<u>FACTUAL ALLEGATIONS</u>

15.     Plaintiff began her tenure with the Defendant as a Customer Support Representative on August 15, 2022.

16.     Plaintiff was initially hired to work at the 25 Nashua Road, Unit E3, Londonderry, NH location.

17.     Throughout her tenure, she maintained an exemplary record without any formal disciplinary actions.

18.     In September of 2023, Mathews began encountering challenges with her direct supervisor, Kenneth Carignan.

19.     Carignan's behavior took a concerning turn as he started giving Mathews unsolicited gifts, making inappropriate comments, and expressing jealousy and desires unrelated to work.

20.     Carignan said that he was a "jealous bitch" that did "not want to see [Mathews] with someone else".

21.     Carignan said he wished he was 20 years younger so that he could have a "woman like [Mathews]".

22.     Carignan got visibly and audibly angry if Mathews did not respond to him quickly or to his liking.

23.     Carignan's conduct escalated when he began driving by Mathews' home and informing her that he was going to leave his wife.

3

24. Mathews decided to report the sexual harassment to the corporate office on November 10, 2023.

25. Mathews reported Carignan's behavior because she had a reasonable, good faith belief that Carignan's actions were illegal.

26. Mathews's intention for reporting Carignan's behavior was to shed light on his actions in the hope that the company would address and eliminate any violations of the law.

27. Mathews had a reasonable, good faith belief that she was entitled to a work environment free from sexual harassment.

28. After Mathews filed her formal complaint, Human Resources suspended Carignan.

29. In the following few days, Carignan continued to message Mathews, send her flowers and teddy bears, and drive near and by her home.

30. On November 13, 2023, Mathews reported the continued harassment to the Office Manager, Cathy Heath.

31. Carignan was terminated on November 13, 2023.

32. Carignan's son was still employed by the company.

33. Upon information and belief, Carignan was also good friends with one of the owners of the company, Shawn Anderson.

34. On November 20, 2023, District Manager Sean Callery, approached Mathews about the newly vacant Branch Manager position.

35. Callery correctly stated that Ms. Mathews had the most tenure of anyone at her branch and that she had the most knowledge of any of her peers.

36.    In the past, Branch Managers have had a personal vehicle to travel and make sales.

37.    Mathews did not have a car at the time and informed Callery that she did not have a car.

38.    Callery responded by saying that this wouldn't be a problem.

39.    He stated that Complete Labor and Staffing could help Mathews with the funds for a personal vehicle.

40.    Callery stated that Complete Labor and Staffing had recently helped an employee, Leah Braman, secure a loan to get a personal vehicle.

41.    Braman was the Branch Manager of the Dover, New Hampshire location at the time.

42.    Mathews explicitly stated that she would be extremely interested in the position.

43.    On November 27, 2023, the Branch Manager position was given to one of Mathews's colleagues, Kayla Martel, who had also been working as a Customer Support Representative.

44.    Martel had only been employed for seven months at the time of her promotion, whereas Mathews had been employed for almost a year and a half.

45.    Mathews believed that she was denied a promotion because of the complaints that she made regarding sexual harassment.

46.    On February 5, 2022, Mathews filed a Charge of Discrimination with the New Hampshire Commission for Human Rights ("NHCHR") and EEOC, alleging a hostile work environment and retaliation.

47.    Despite Mathews's impeccable performance history with the Defendant, after reporting the harassment and filing her Charge, she began to be singled out and written up for frivolous and manufactured reasons.

48.    On at least one occasion, when Mathews was being written up, Martel admitted that she "didn't want to" discipline Mathews, but that corporate had instructed her to do so.

49.    Defendant's actions constituted unlawful retaliation.

50.    Around March of 2024, Mathews learned that she would need to move back to Maine due to a family emergency.

51.    Mathews had performed work for Maine employers to place employees at Maine work locations, and was familiar with the Maine branches.

52.    Mathews spoke to Callery about transferring to a position in the Bangor, Maine office.

53.    Callery initially said that he would speak to corporate about the possibility of a transfer.

54.    When Mathews did not hear anything back from Callery, she followed up with him a few days later.

55.    At that point, Callery indicated that there were not any open positions in the Bangor office but that they would keep Mathews in mind when a position opened in the Bangor office.

56.    On or around April 19, 2024, Mathews was forced to resign from her position at CLS as she was moving to Maine and CLS was not offering her a position in Maine.

57.    On Mathews's final day of employment, she spoke to the District Manager for the Bangor location, William Houston, and then-LLC Member Michael Trogler, and again asked about a transfer to the Bangor office.

58.    Mathews informed Houston and Trogler that her mother would be providing her with a vehicle when she returned to Maine and so she would have her own transportation in Maine.

59.    Houston and Trogler indicated that there still were no available positions, but that they would reach back out to Mathews and let her know if a position opened up so that she could apply.

60.    Shortly thereafter, Mathews became aware that the Defendant had publicly posted a Branch Manager position for the Bangor location.

61.    Mathews was never contacted by Houston or anyone else from the company about any open positions at the Bangor office.

62.    Still, Mathews decided that she would apply for the position.

63.    Defendant had previously indicated that Mathews would have been an excellent choice for the Londonderry, NH Branch Manager position, were it not for her lack of a personal vehicle.

64.    Now that Mathews had access to a personal vehicle, she was hopeful that the Defendant would hire her for the position in Bangor.

65.    Mathews's application was declined without an interview or follow up with her.

66.    Defendant's failure to hire Mathews constituted unlawful retaliation.

67.    Mathews was well-qualified for the position that she applied for and had years of experience with the company.

68. Defendant's stated rationale for failing to hire Mathews into the Branch Manager position in Londonderry was that she did not have a vehicle.

69. Upon returning to Maine to care for family, Mathews had access to a vehicle and she communicated the fact that she had a vehicle to Defendant's managers in advance of her application for the Bangor Branch Manager position.

70. The rationale that Defendant used to justify its failure to hire Mathews in the past was not present in connection with the Bangor position.

71. In fact, the Defendant's actions surrounding the placement of another employee in the Bangor Branch Manager position reflect that Defendant has gone to great lengths to avoid hiring Mathews for any position.

72. The Bangor Branch Manager position was filled by a Bangor Customer Service Representative AB.[1] AB was promoted to the Branch Manager position of the Bangor, Maine location in April of 2024.

73. Although AB was originally informed that he would have to apply for the open position, the job posting was quickly taken down, and AB was hired without so much as an interview.

74. After being given the Branch Manager position, AB was tasked with hiring a new Customer Support Representative to backfill his role.

75. During the process to fill the CSR position, AB had a conversation with Houston and Trogler.

76. Houston and Trogler instructed AB not to consider Mathews for the CSR position, if she applied.

---

[1] The employee's name is replaced with a pseudonym to protect his privacy.

77.     Houston and Trogler informed AB of Mathews's pending charge with the New Hampshire Commission for Human Rights, and shared specific details about her claims, including the fact that she had been sexually harassed by her former manager.

78.     Houston and Trogler indicated that Mathews's charge was the primary reason that she was not considered for the Branch Manager position when it was posted.

79.     AB was instructed to post all future job listings for the company as "confidential", so that it would not be publicly advertised that the Defendant had open positions.

80.     Houston and Trogler's actions reflect that they harbored retaliatory animus towards the Plaintiff in connection with her allegations of sexual harassment and retaliation.

81.     Defendant short-circuited the hiring process for the open Bangor Branch Manager position and ended up just giving it to AB without a formal application or interview process to avoid a hiring process that included the Plaintiff.

82.     Despite telling Mathews that they would notify her if any positions opened up at the Bangor location, Defendant's managers did the opposite, and actively hid open positions to avoid Mathews applying.

83.     AB only began working for the Defendant on or around February 2023.

84.     Prior to working for  Defendant, AB had no relevant work experience and had only worked in security and landscaping.

85.     Mathews had worked for the Defendant for five months before AB was hired.

86.     Complainant was very good at her job as a CSR and was identified as a good fit to fill the open Branch Manager position at her New Hampshire location until she was denied the position due to retaliation.

87.     Plaintiff's protected activity was a factor that made a difference in the failure to hire her for the Branch Manager position.

88.     Defendant's claim that there were no other open positions at the Bangor location during the relevant period were false, as there were at least two CSR positions, which were posted anonymously to prevent Mathews from applying.

89.     Houston and Trogler were aware of Mathews's NHCHR-EEOC Charge and were unwilling to hire Mathews for positions in Bangor because of her Charge.

90.     There is direct evidence that the Defendant failed to hire Plaintiff for any position in Bangor because of the Charge and her other protected activity.

91.     Plaintiff had a reasonable, good-faith belief that the allegations she reported to the company and to the New Hampshire Commission for Human Rights were illegal.

92.     Plaintiff had a reasonable, good-faith belief that she had been subjected to unlawful sex discrimination and retaliation.

93.     Plaintiff reported her concerns about this issue because she wanted to bring the harassment to her employer's attention and to address and eliminate any violations of the law.

94.     Plaintiff engaged in protected activity under the Maine Whistleblower Protection Act, the Maine Human Rights Act, and Title VII of the Civil Rights Act when she reported and opposed the sexual harassment and retaliation to her employer and to the NHCHR and EEOC.

95.     On June 10, 2026, the NHCHR issued a notice of probable cause with respect to Plaintiff's claim of a hostile work environment.

96.    Plaintiff was subjected to unlawful retaliation when Defendant failed to transfer her to a position in Maine and then failed to hire her because she engaged in protected activity.

97.    The probative timing of the events in this matter supports a causal connection between Plaintiff's protected activity and Defendant's decision not to hire her, including evidence of motive, animus, and pretext.

98.    Defendant has yet to put forward a plausible explanation for the decision not to hire the Plaintiff at the Bangor branch.

99.    Defendant's inability to explain this decision is evidence of pretext and evidence of a causal connection between Plaintiff's protected activity and her failure to be hired.

100.    Defendant's failure to transfer or hire Plaintiff caused Plaintiff to suffer damages, including lost wages, lost benefits, out-of-pocket costs, and loss of enjoyment of life.

101.    Defendant violated Plaintiff's rights with knowing and reckless disregard for these rights.

## COUNT I: MHRA – DISCRIMINATION

102.    Plaintiff reasserts and incorporates by reference Paragraphs 1 through 101 as if fully set forth herein.

103.    Plaintiff was discriminated against on the basis of sex.

104.    Defendant's conduct violates the MHRA's prohibition against sex discrimination.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, benefits, loss of enjoyment of life, humiliation, and other economic and non-economic damages.

## COUNT II: MHRA – RETALIATION

11

106.    Plaintiff reasserts and incorporates by reference Paragraphs 1 through 105 as if fully set forth herein.

107.    Plaintiff engaged in protected activity by opposing a hostile work environment, and reporting and opposing conduct Plaintiff reasonably believed to be unlawful and/or in violation of the MHRA.

108.    Defendant retaliated against Plaintiff by refusing to transfer her to the Bangor location or notifying her of open positions or hire her for an open position for which she was qualified.

109.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, benefits, loss of enjoyment of life, humiliation, and other economic and non-economic damages.

<u>COUNT III: MWPA – RETALIATION</u>

110.    Plaintiff reasserts and incorporates by reference Paragraphs 1 through 109 as if fully set forth herein.

111.    Plaintiff engaged in protected activity under the MWPA, as enforced through the MHRA, by reporting and opposing, in good faith, what she reasonably believed were violations of the law, including a sexual harassment, a hostile work environment, and retaliation.

112.    Defendant retaliated against Plaintiff by refusing to transfer her to the Bangor location, inform her of open positions, or to hire her for a position that she was qualified for.

113. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, benefits, loss of enjoyment of life, humiliation, and other economic and non-economic damages.

## COUNT IV: TITLE VII – DISCRIMINATION

114. Plaintiff reasserts and incorporates by reference Paragraphs 1 through 113 as if fully set forth herein.

115. Plaintiff was discriminated against on the basis of sex.

116. Defendant's conduct violates Title VII's prohibition against sex discrimination.

117. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, benefits, loss of enjoyment of life, humiliation, and other economic and non-economic damages.

## COUNT V: TITLE VII – RETALIATION

118. Plaintiff reasserts and incorporates by reference Paragraphs 1 through 117 as if fully set forth herein.

119. Plaintiff engaged in activity protected by Title VII, including reporting and opposing sexual harassment, a hostile work environment, and conduct that Plaintiff reasonably believed to be unlawful and/or in violation of Title VII.

120. Defendant retaliated against Plaintiff by refusing to transfer her to the Bangor location, notify her of open positions, or to hire her for a position that she was qualified for.

121. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, benefits, loss of enjoyment of life, humiliation, and other economic and non-economic damages.

13

<u>PRAYER FOR RELIEF</u>

Plaintiff respectfully requests that the Court grant the following relief:

A.      Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

B.      Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate Plaintiff's rights;

C.      Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D.      Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's unlawful conduct;

E.      Award equitable relief for back pay, benefits and prejudgment interest;

F.      Award compensatory damages in an amount to be determined at trial;

G.      Award punitive damages in an amount to be determined at trial;

H.      Award nominal damages;

I.      Award attorneys' fees, including legal expenses, and costs;

J.      Award prejudgment interest;

K.      Permanently enjoin Defendant from engaging in any employment practices which violate the laws it violated in this case;

L.      Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination or retaliation in the future;

M.      Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

N.      Require that Defendant train all management level employees on the protections

afforded by the MHRA, MWPA, and Title VII;

O.      Require that Defendant place a document in Plaintiff's personnel file which

explains that Defendant unlawfully refused to transfer/hire Plaintiff because of unlawful

retaliation; and

P.      Grant to Plaintiff such other and further relief as may be just and proper.


Dated:      July 31, 2026                        /s/ Chad T. Hansen_____
                                                 Chad T. Hansen
                                                 Attorney for the Plaintiff

                                                 EMPLOYEE RIGHTS GROUP
                                                 92 Exchange Street 2nd floor
                                                 Portland, Maine 04101
                                                 Tel. (207) 874-0905
                                                 Chad@EmployeeRightsLaw.Attorney

15